```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

--------------------------------X  Docket#
TERRENCE SAMPSON,               :  19-cv-04946(DG)(RER)
                                :
                                :
              Plaintiff,        :
                                :
       - versus -              :  U.S. Courthouse
                                :  Brooklyn, New York
INTERNATIONAL UNION OF OPERATING :
ENGINEERS LOCAL 14-14B,         :
                                :  May 26, 2022
              Defendant         :
--------------------------------X
```

     TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
          BEFORE THE HONORABLE RAMON E. REYES, JR.
             UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**


**For the Plaintiff**:          **Michael G. O'Neill, Esq.**
                                Office of Michael G. O'Neill
                                30 Vesey Street, Suite 301
                                New York, NY 10007


**For the Defendant**:          **Andrew Williamson, Esq.**
                                FordHarrison LLP
                                366 Madison Avenue, 7th Floor
                                New York, NY  10007


**Transcription Service**:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1    THE COURT:  Good morning.  This is Magistrate

2 Judge Reyes.  We're holding a telephone pre-motion

3 conference in *Sampson v. International Union of Operating*

4 *Engineers Local 14-14B*, docket number 19-cv-4946.

5    Counsel for plaintiff, please state your name

6 for the record.

7    MR. O'NEILL:  Good morning, your Honor.  It's

8 Michael O'Neill for the plaintiff.

9    THE COURT:  Counsel for the defendant?

10    MR. WILLIAMSON:  Good morning, your Honor.

11 Andrew Williamson with FordHarrison here on behalf of the

12 defendant.

13    THE COURT:  Good morning.  So Mr. O'Neill, tell

14 me about the motion that you want to make.

15    MR. O'NEILL:  Yes, your Honor.  We want to

16 supplement the complaint.  I submitted a proposed

17 supplemental complaint.  I think that's substantially the

18 form that we would file it in.  It's to simply bring

19 facts that occurred after the filing of the complaint

20 that are additional facts supporting the claims that were

21 alleged in the complaint.  We would like to bring them

22 into the case.  It was really precipitated when I asked

23 defendant to update their database with information.  I

24 think when they produced it, they produced it through the

25 end of 2019.  I asked them to give us updated data and

3

Proceedings

1  they said it's not part of the case.  So I thought that

2  it would be more expedient to supplement the complaint

3  than to have a discovery dispute on the issue.  So that's

4  essentially what it is that plaintiff wants to do.

5          THE COURT:  The data that was produced was

6  through the end of 2019?

7          MR. O'NEILL:  Correct.

8          THE COURT:  Even though the complaint was filed

9  the third quarter of 20 --

10          MR. O'NEILL:  The third quarter of 2019.

11          THE COURT:  Yes.

12          MR. O'NEILL:  Yeah.

13          THE COURT:  The complaint was filed August 29,

14  2019 that they produce data through the end of 2019,

15  correct?

16          MR. O'NEILL:  That's my understanding.

17          THE COURT:  Right.  Mr. Williamson, what is the

18  problem?

19          MR. WILLIAMSON:  Your Honor, our position is

20  really threefold here.  The supplemental pleading would

21  be futile for a number of reasons.  (Indiscernible)

22  completely changed (indiscernible) here which was

23  originally the client was referred to lower paying jobs

24  on lower paying machinery.  Now it's that he worked less

25  hours since 2017.  He still doesn't identify who, what,

4

                        Proceedings

1    when, and where or how he was discriminated against, but

2    he's an African-American.  He filed an EEOC charge in

3    2017.  He's again working less hours barely two years

4    later in 2019.

5            So in our opinion, this wouldn't plausibly

6    plead claims of either retaliation or discrimination

7    (indiscernible) to a 12(b)(6) motion.

8            And also, the allegations are implausible on --

9            THE COURT:  But Rule 15D says that -- are you

10   saying that the original pleading is defective or the

11   supplemental pleading?

12           MR. WILLIAMSON:  Our opinion is that both are.

13           THE COURT:  Yet you didn't move to dismiss?

14           MR. WILLIAMSON:  Yes, that was a strategic

15   decision.  And I will remark that at the original earlier

16   conference with the prior magistrate judge, the

17   magistrate judge even remarked and asked plaintiff at

18   that conference whether or not just pleading

19   (indiscernible) was enough.  We did make a strategic

20   decision back then not to file a motion to dismiss.

21   Instead, that would have been dealt with on the motion

22   for summary judgment after the discovery period ended and

23   plaintiff had not yielded any -- or the discovery period

24   hadn't yielded any evidence to support the implausible

25   allegations.

5

                              Proceedings
1              And just to add to my earlier point, your
2    Honor, the proposed supplemental pleading is implausible
3    on its face.  He alleges that he worked 178 fewer hours
4    in 2020 than he did in 2019.  Well during the COVID
5    pandemic, New York City Executive Order essentially shut
6    down the entire construction industry for approximately
7    three months which is a much more plausible explanation
8    for the de minimis reduction in hours than any
9    retaliation based on protected activity that occurred in
10   mid-2017 and resulted in the EEOC charge.
11             THE COURT:  But isn't the question whether in
12   2020 he worked a few hours than white workers, white
13   union members, not whether he worked less hours than he
14   had previously worked?  I mean that's the --
15             MR. WILLIAMSON:  The way the proposed pleading
16   is framed, your Honor, is that his reduction in hours was
17   a result of retaliation by the union.  And he tries to
18   try it to the EEOC complaint and made-2017 which I would
19   mention the proposed supplemental pleading doesn't
20   reference the amount of hours that the plaintiff worked
21   in 2018 but instead jumps all the way ahead to 2019.  But
22   I'd even argue that he hasn't plausibly -- or he would
23   not be able to plausibly plead a causal connection
24   between the EEOC charge in 2017 and a de minimis
25   reduction in hours in 2019, a year and a half later.

6

Proceedings

1      And in addition to the futility here of this

2  application, your Honor, plaintiff could have and should

3  have made or raised these allegation months, if not years

4  ago.  He's referencing the amount of hours he worked

5  dating back to 2019.  Plaintiff has known how many hours

6  he worked since 2019 and plaintiff's counsel has known

7  the latest and 2021 the number of hours that he worked in

8  2019.  Despite that, he's waited until nearly a month

9  after fact discovery closed, which was extended a number

10  of times.  And on the final extension, your Honor, it

11  explicitly provided in the order granting the extension

12  that no further extensions would be granted.

13      Despite all of that, Mr. O'Neill waited until

14  after fact discovery closed to make this application.

15  And I don't think there's a coincidence here that

16  plaintiff has filed this application just a handful of

17  days after his transcript was reviewed and errata sheet

18  was submitted that included material changes to his

19  testimony which precipitated our request to conduct a

20  further deposition of the plaintiff.  And as far as

21  plaintiff --

22      THE COURT:  (Indiscernible).

23      MR. WILLIAMSON:  Sorry, your Honor.

24      THE COURT:  Go ahead, Mr. Williamson, finish

25  up.

7

Proceedings

1        MR. WILLIAMSON:  I was going to say as far as

2   Mr. O'Neill's argument that this was precipitated by our

3   refusal to produce data beyond 2019, well he's had that

4   data since February of 2022.  Despite that, he waited

5   until just a handful of days before the close of fact

6   discovery, 13 months later, to ask for further data.  So

7   I don't think there could be a clearer example of undue

8   delay here.

9        THE COURT:  Is it the defendant's position that

10  plaintiff can't assert any claims for anything that

11  happened after he filed the complaint?

12       MR. WILLIAMSON:  Our position would be that his

13  recovery would be cut off in this action up until the

14  complaint based on the way the complaint is framed now.

15       THE COURT:  Why did he produce data after the

16  date of the complaint?  Data of the hours worked and

17  all --

18       MR. WILLIAMSON:  Yeah, my under --

19       THE COURT:  -- that after the date of the

20  complaint?

21       MR. WILLIAMSON:  My understanding, your Honor,

22  is that's just the way the data is produced

23  electronically, it's by year.  And I believe that was

24  also a part of some discussion between the attorneys in

25  this case and also the union's in-house counsel when

8

Proceedings

1  there was extensive motion practice on the issue of

2  electronic data.

3          THE COURT:  What would prohibit Mr. O'Neill

4  from filing a separate action on this claim?

5          MR. WILLIAMSON:  We're not saying he couldn't,

6  your Honor.  He could.  But again, we would make the same

7  motion to dismiss there based on those allegations.

8  We're not saying here that he shouldn't be able to file a

9  motion or fully brief a motion in this proposed

10  supplemental complaint.  It's just that our position

11  would be the same here as it would be in the new action

12  that those allegations, related claims would be futile

13  because they'd be subject to 12(b)(6) motions.

14          THE COURT:  And yet your client made a

15  strategic decision not to file such a motion in this

16  case.

17          MR. WILLIAMSON:  That's correct, at the start

18  of discovery, or prior to discovery.

19          THE COURT:  All right.  Mr. O'Neill, why don't

20  you just file a separate case and then have it related to

21  this one?  You know, get --

22          MR. O'NEILL:  Well yeah, I mean yeah, I suspect

23  if I did file a separate case in the eastern district

24  then the defendant would probably move to consolidate.

25  I'm just confused by defendant's position here a little

9

Proceedings

1   bit.  I've never known a defendant who prefers two

2   lawsuits over one.  It certainly would make settling a

3   case more difficult because they would want a general

4   release and we'd have a separate case out there.

5          But if that's what defendants want, then I

6   guess that's what they can have.

7          MR. WILLIAMSON:  Just to clarify again, our

8   desire isn't to litigate two cases.  We think plaintiff

9   should be able to file his motion in this case and we'll

10  just oppose it, make the same argument that we would and

11  it would be decided here.

12         THE COURT:  But that wouldn't preclude him,

13  even if you would win that motion, that wouldn't preclude

14  him from the next day filing another case.

15         MR. WILLIAMSON:  That's correct.

16         THE COURT:  This is only whether he can -- this

17  motion is only whether he can file a supplemental

18  complaint.  It wouldn't be with prejudice to the claim.

19  So --

20         MR. WILLIAMSON:  The other thing I would note

21  with the issue with him filing a new action, a new claim,

22  that he's going to try to assert presumably Title 7 and

23  other claims that are going to be time barred.  And one

24  other thing here is that the underlying EEOC charge here,

25  Mr. O'Neill, or plaintiff rather, did not raise a

Case 1:19-cv-04946-DG-RER Document 65 Filed 08/02/22 Page 10 of 15 PageID #: 372

Proceedings

1 retaliation claim. And so that's something else that

2 would be dealt with on a motion for summary judgment

3 here. And his failure to exhaust is something that's

4 included in our answer here. The failure to exhaust is

5 (indiscernible).

6 THE COURT: Why don't you, Mr. O'Neill, why

7 don't you file a full blown motion and I'll have you

8 folks confer on a briefing schedule for it. Or if you

9 think it's more expeditious, Mr. O'Neill, go ahead and

10 file another action and seek to have it consolidated with

11 this one. That will at least save you the headache of

12 filing a motion.

13 MR. O'NEILL: Yeah. Okay. That's fine. One

14 or the other or I suppose neither. But we'll -- well, I

15 don't want to be too coy here. I mean well I don't know

16 whether there would be -- I mean there would probably be

17 some federal jurisdiction on a standalone complaint based

18 on events occurring after we filed the first complaint.

19 But it's also possible that plaintiff would want to bring

20 that in state court. So if we bring a separate action,

21 it may not be in the federal court.

22 THE COURT: Or maybe they'll remove it somehow.

23 MR. O'NEILL: Well, if it has federal claims,

24 they could do that.

25 THE COURT: All right. Look --

Transcriptions Plus II, Inc.

—

11

Proceedings

1        MR. O'NEILL:  But anyway, that's something for

2   the plaintiff to decide and we'll talk it over with him.

3        THE COURT:  Why don't you think about it?  He

4   And if you are going to file a motion to supplement with

5   a brief and all of that, I would like to know what the

6   briefing schedule is going to be.  No later than -- I'll

7   give you till June 3rd.

8        MR. O'NEILL:  Okay.

9        THE COURT:  You'll make a decision over the

10  next week, meet and confer with Mr. Williamson and tell

11  me what the briefing schedule is going to be.  I'm

12  uncomfortable making a decision on these letters.

13        MR. O'NEILL:  Sure.

14        THE COURT:  All right?

15        MR. O'NEILL:  A couple of housekeeping items,

16  your Honor, if I may?

17        THE COURT:  Sure.

18        MR. O'NEILL:  As Mr. Williamson mentioned,

19  we've agreed to produce plaintiff to answer any questions

20  they have about the corrections he made in the

21  transcript.  So I have no objection to that.  I just want

22  the Court to be aware that we will be doing that.

23        Defendant has not produced a 30(b)(6) witness

24  for one of the categories which was to explain some of

25  the finer points of its computer system and database, and

12

Proceedings

1   they have not agreed to produce a witness.  So I don't

2   know if we can deal with that today or if you want

3   separate letters on that.

4            And then I take it we'll be holding the expert

5   disclosure discovery in abeyance until the supplemental

6   complaint issue is resolved?

7            THE COURT:  Yes.  What about the 30(b)(6)

8   witness, I guess additional 30(b)(6) witness, Mr.

9   Williamson?

10            MR. WILLIAMSON:  So as part of planning the

11   30(b)(6) notice there were a number of topics listed

12   obviously and one of them dealt with really the specifics

13   are more of a technological aspect of the union's

14   Referral Hall data or Referral Hall processes.  We told

15   Mr. O'Neill that the union doesn't have anyone in house

16   who maintains or otherwise has knowledge of the technical

17   side of it.  We've identified the outside vendor who

18   handles that.  We've even offered to facilitate service

19   of a subpoena on that entity to help Mr. O'Neill conduct

20   a deposition of that entity and we stand ready to do that

21   moving forward also.

22            THE COURT:  Mr. O'Neill, why is that not a

23   problem?  Why is that a problem?

24            MR. O'NEILL:  Well, is not necessarily a

25   problem.  If defendant is agreeable to us doing it that

13

Proceedings

1  way, I'll do it that way.

2          MR. WILLIAMSON:  Yeah, that's what we --

3          MR. O'NEILL:  I mean it's their database.  And

4  I am certain that if they wanted this information, they

5  could get it if they haven't already got it.  And I don't

6  think it should be our requirement to chase down somebody

7  for information that they have control over, but I'm

8  willing to do it that way if that's --

9          THE COURT:  Well I mean the alternative is that

10  they get someone to confer with whoever from that company

11  to get up to speed on it.  But I'm sure if they did that,

12  there would be questions that you would ask that that

13  additional 30(b)(6) witness won't be able to answer

14  because they're not the master of the computer program.

15  They just don't know.  They get an outside vendor to

16  prepare a computer system for them and they say here's

17  how you put in the data and a 30(b)(6) witness is not

18  going to know enough even if they --

19          MR. O'NEILL:  Yeah, I understand.  I just think

20  that they control this witness, that they could -- they

21  haven't said that the person that they use won't testify,

22  they've asked him to and he's refused.  They just tell me

23  I got to go get him.  But you know, I'll do it their way.

24  I --

25          MR. WILLIAMSON:  That's not what we told

14

Proceedings

1    plaintiff's counsel.  We've offered from the outset after

2    we identified this is the outside entity that does it.

3    If Mr. O'Neill -- it shouldn't take long to prepare a

4    subpoena.  We will facilitate service and have them

5    appear.  We can't make a third party appear at a

6    deposition.

7              THE COURT:  No, but you can ask.

8              MR. O'NEILL:  I'll do it that way, your Honor.

9              THE COURT:  Mr. O'Neill, prepare the subpoena

10   and work with Mr. Williamson to have it served.  And if

11   you have a problem getting that person, then you'll let

12   me know and we'll deal with that.

13             MR. O'NEILL:  Okay.  Fair enough.  All right.

14   Well that's all plaintiff has for today.

15             THE COURT:  Okay.  All right.  Thank you,

16   gentlemen.

17             MR. WILLIAMSON:  Thank you, your Honor.

18             MR. O'NEILL:  Thank you, your Honor.

19                    (Matter concluded)

20                         -oOo-

21

22

23

24

25

15

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **August**, 2022.

*Mary Greco*

Transcriptions Plus II, Inc.